IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MCSHANE CONSTRUCTION COMPANY LLC | ) ) ) | CASE NO. _____ |
| Plaintiffs | ) ) ) | **VERIFIED COMPLAINT** |
| vs. | ) ) ) | |
| GOTHAM INSURANCE COMPANY | ) ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, McShane Construction Company LLC ("McShane"), and for its Complaint against Defendant, Gotham Insurance Company, states and alleges as follows:

## GENERAL ALLEGATIONS:

1.     Plaintiff, McShane, is a Delaware limited liability company with its principal place of business in Rosemont, Illinois, and is authorized to conduct business in Nebraska.

2.     Defendant, Gotham Insurance Company ("Gotham"), is a New Jersey corporation with its principal place of business at 412 Mt. Kemble Avenue, Suite 300C, Morristown, NJ 07960, is not authorized to conduct business in Nebraska, and is not registered with the Nebraska Department of Insurance.

3.     McShane was the General Contractor for an apartment complex built and located in Omaha, Douglas County, Nebraska, called Springs at Legacy Commons ("Project") and the owner of the Project was Continental 159 Fund, LLC.

1

4.      This Court has personal jurisdiction over both parties pursuant to Neb. Rev. Stat. § 25-536.

5.      This Court has subject matter jurisdiction over both parties pursuant to 28 USC §1332.

6.      The legal description of the real property on which the apartment complex was built is Lot 1, Legacy Replat 16, an Addition to the City of Omaha, Douglas County, Nebraska ("Real Property").

7.      The Project's overall cost was approximately $15,100,000 and involved the construction of a 196 unit apartment complex with 7 apartment buildings and a clubhouse.

8.      Mallory Fire Protection Services, Inc. ("Mallory") was a subcontractor for the Project's fire protection/sprinkler system.   Mallory's subcontract was for $345,000. (A copy of the Subcontract and General Conditions of Subcontract ("Mallory Subcontract") are attached hereto as Exhibit A).

9.      As set forth in McShane's Second Amended Answer and Amended Counterclaim, McShane has made claims against Mallory asserting that Mallory's failure properly to design and install a fire suppression system at the Project caused McShane damages and losses exceeding $614,291.17 (Exhibit B).

10.     The Subcontract between Mallory and McShane specifically contains an **Insurance Section 9** which requires Mallory to obtain various insurance coverages to **"protect"** McShane.  Pursuant to its terms, for Mallory to work on the Project, Mallory **"shall name McShane"** as **"an Additional Insured"** to those insurance contracts and **"shall provide McShane with a Certificate of Insurance"** which evidences the insurance and McShane being an **"Additional Insured thereunder."**   Among other

coverages, the subcontract requires **"Comprehensive General Liability Insurance"** and **"Errors and Omissions/Professional Liability Insurance for all design services rendered by or under the Subcontractor."** (see Exhibit A, emphasis supplied).

11.     Mallory's insurer, Gotham, issued Policy No. GL2012FSC00451 (the "Policy"). A copy of the Policy, as received from Gotham's appointed counsel, is attached hereto and marked as Exhibit C.

12.     Gotham's Policy for Mallory affords coverage for precisely these types of claims. The Policy provides both general liability and professional liability extension coverages to Mallory for its Fire Suppression business.

13.     As part of the "Additional Coverages" provided by Gotham, the Policy extends and includes **"Contractor's Design Liability"** coverage for Mallory and provides **an "Errors and Omissions Coverage Extension"** via an Endorsement.   Per another endorsement, Gotham's policy becomes the **"Primary"** coverage for McShane.

14.     As part of its services, Mallory provided McShane with various schematics, drawings, and other documents for the design/build of the fire suppression system, including, for example, those with the required stamps of an engineer, such as a "Professional Fire Protection Engineer." (Exhibit D).

15.     Among other provisions extending broad coverage to Mallory for both professional and general liability claims, the Policy via a **"Fire Suppression Property Damage Extension Endorsement"** removes various exclusions to the policy form, including subparts (4)-(6) of Exclusion J.

16.     Removal of Exclusion J (6) expands Mallory's coverages also to include: **"That particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it."**

17.     So, in addition to extending professional liability and other negligence coverage to Mallory for "Design Liability" and related claims (including for **money damages** via the **Errors and Omissions Coverage Extension**), the Policy also further broadly covers "property that must be restored, repaired, or replaced" because Mallory's work was "incorrectly performed on it."

18.     Put simply, the Policy covers the very types of claims made, and the resulting damages and losses sustained, by McShane.

19.     Prior to or during June 2013, a claim was made to Gotham under the Policy as to Mallory's liability and Gotham's corresponding responsibility to Mallory (the "Mallory Claim").

20.     During the first week of June 2013, McShane also made a claim on its own behalf, as an Additional Insured under the Policy (the "McShane Claim"). (Exhibit E) A copy of the Certificate of Liability Insurance, Endorsement Additional Insured – Owners, Lessees or Contractors – Schedule Person or Organization, and Endorsement Additional Insured – Owners, Lessees or Contractors – Completed Operations, with "Additional Coverages" including "Contractor's Design Liability" (Exhibit F).

21.     The **Gotham Policy Certificate of Insurance** for Mallory was furnished to McShane as a requirement for Mallory to work on the Project and for McShane's reliance on Gotham providing such coverages *for McShane's benefit and protection* and on which, in fact, McShane relied in having Mallory provide and perform Fire Suppression

4

Design and Installation work for the Project. The Gotham **Insurance Certificate** is signed by **Gotham's "Authorized Representative"** in the lower right hand corner so that Gotham had approved of **McShane becoming party to the policy as an "Insured." Thus, the "information" conveyed by the Gotham Certificate correspondingly conveys Gotham's (and Mallory's) intent that McShane be covered and benefitted by the Gotham Policy.**

22.     Gotham, through its affiliated/parent company Prosight Specialty Insurance ("Prosight"), assigned claim no. EWR00008787 to the McShane Claim.   Christopher Davis ("Mr. Davis") was assigned as Gotham's responsible claims handler for McShane's claim (on behalf of Gotham/Prosight).

23.     Gotham, through its affiliated/parent company Prosight, assigned claim no. EWR0005924 to the separate Mallory Claim.   Mr. Davis was assigned as Gotham's responsible claims handler for Mallory's separate claim (on behalf of Gotham/Prosight).

24.     The history of Gotham's McShane Claim adjustment to the point of concluding a **final report** on the McShane Claim followed numerous events and communication exchanges between McShane and Mr. Davis of Gotham/Prosight.

25.     Scott Hoppa ("Mr. Hoppa"), Senior Vice President for McShane, worked closely and communicated regularly with Mr. Davis of Gotham/Prosight to adjust and resolve McShane's Claim, as an Additional Insured.

26.     On or about June 27, 2013, Mr. Davis assigned William Goodro of Eagle Adjusting (Mr. Goodro) to assist Mr. Davis with "hands on" adjustment of the McShane Claim.  (Exhibit G).

27.     McShane's Mr. Hoppa also provided information to, and communicated regularly with, Mr. Goodro.

28.     In or around August 2013, Gotham/Prosight appointed and retained Richard Gilloon ("Mr. Gilloon") to act and advise regarding Gotham's duties and responsibilities as to the then pending litigation and the Mallory Claim.

29.     After receiving voluminous information and documentation from McShane's Mr. Hoppa, on or about September 30, 2013, Mr. Goodro communicated with Mr. Hoppa stating the damages 1-7 & 9 referenced in Mr. Hoppa's Damages Spreadsheet were viewed as "reasonable". (Exhibit H).

30.     Mr. Goodro also communicated to Gotham's Mr. Davis, via a Status Report dated October 1, 2013, that the damages 1-7 & 9 referenced in Mr. Hoppa's Damages Spreadsheet were "more than reasonable". (Exhibit I).

31.     In furtherance of the adjustment and resolution of other amounts of the McShane Claim, as a Gotham Additional Insured, Mr. Goodro requested from Mr. Hoppa additional documentation regarding line items 8, 10, 11, & 12 of the Damages Spreadsheet. (Exhibit J).

32.     As stated above, Gotham maintained a separate claim number for the McShane Claim as an Additional Insured; however on October 2, 2013, Mr. Davis sent an email to Mr. Goodro stating, "Please change the file number of this file to EWR00005924" and "Could you please change our file # to EWR00005924? It was reassigned within our system." (Exhibit K).

33.     However, Gotham's Mr. Davis does not communicate the change in file number to McShane until a October 31, 2013 communication, where Mr. Davis reversed

himself on the prior claims handling/number and emphasized to Mr. Hoppa (and also referenced Mr. Goodro) that he should use and refer to the McShane Claim as Claim Number EWR00005924, stating: "This is the *correct* claim number." (Exhibit L, emphasis added).

34.     Claim # EWR00005924 is the same claim number as the separate Mallory Claim.

35.     McShane's Mr. Hoppa continued to work with Gotham's Mr. Davis and Mr. Goodro to adjust the McShane Claim and finalize a payment for McShane's damages.

36.     Through the summer and fall of 2013, McShane's Mr. Hoppa supplied Gotham's Mr. Davis and Mr. Goodro with information and an accounting of the damages and losses resulting from Mallory's Fire Suppression Design and Installation problems, with still another response and update November 7, 2013 (the "November Damages Spreadsheet"). (Exhibit M).

37.     On or about November 15, 2013, Mr. Goodro sent a Status Report to Gotham's Mr. Davis stating he agreed with Mr. Hoppa's claim that it took 71 additional days for the Project to be completed, No. 11 of Mr. Hoppa's Damage Spreadsheet appeared to be "reasonable", and recommended paying overhead and profit in the amount of $8,649.59. (Exhibit N).

38.     Also, on November 15, 2013, McShane's Mr. Hoppa emailed both Gotham's Mr. Davis and Mr. Goodro asking: **"Are we at a point where we can wrap up this claim?"** (Exhibit O, emphasis added).

39.     On November 15, 2013, Gotham's Mr. Davis sent a response email to Mr. Hoppa, with a copy to Mr. Goodro, stating that **"Bill is finalizing everything up."** (Exhibit P, emphasis added).

40.     On November 21, 2013, Gotham's Mr. Davis emailed McShane's Mr. Hoppa stating: "Waiting on a final report from Bill." (Exhibit Q).

41.     After nearly 5-6 months of investigation, adjustment, and follow up, the McShane Claim, as an Additional Insured, had reached the point of claim payment, as Gotham's Mr. Davis had prepared a **"final report"** on the McShane Claim as an Additional Insured.

42.     On or about November 27, 2013, Mr. Goodro, who personally inspected and assessed the damage at the Project site and all of the relevant supporting documentation, sent a Final Report to Gotham's Mr. Davis.   The Final Report stated, "**My final recommendation for the payment of the claim relating to the improper installation of the fire sprinkler system is $499,453.57.**"   The Final Report also included a breakdown of the $499,453.57 amount – that had been confirmed and established for payment on the McShane Claim -- in a spreadsheet. (Exhibit R, emphasis added).

43.     On or about December 3, 2013, Gotham's Mr. Davis sent an email to Mr. Goodro stating, "Bill, I'm going to need a more detailed report from you.   The recommended settlement amount is near $500,000 and you are providing me with two pages stating that you recommend payment.   I understand that you have previously provided information but it is spread over multiple reports and the information changed over time.   I need you to consolidate your reports into one final collection." (Exhibit S).

8

44.     On December 5, 2013, Mr. Goodro provided Gotham's Mr. Davis with an Updated Final Report, as requested, and again concluded that **payment should be made to McShane in the amount of $499,453.57**, which the report included all of the additional information that Gotham's Mr. Davis requested in the December 3, 2013 email. (Exhibit T).

45.     The Updated Final Report even stated that Mr. Goodro prepared a "comparative estimate" for the drywall and insulation for buildings 4 & 5, and determined and confirmed via Mr. Goodro's calculations that an amount, in excess of $300,000.00 was warranted, which **far exceeded** McShane's request of $183,630.85, and with Mr. Goodro believing that McShane's salutary hiring of a large crew of workers had helped substantially reduce the overall costs.

46.     Also, on December 5, 2013, Gotham's Mr. Davis emailed McShane's Mr. Hoppa advising that "Yes, he [Mr. Goodro] sent me a report the other day but I requested further clarification from him.  He is supposed to send me a revised report today." (Exhibit U) (which, as set forth herein, Mr. Goodro in fact proceeded to do).

47.     On December 10, 2013, McShane's Mr. Hoppa emailed Gotham's Mr. Davis stating: **"Just following up.  I would really like to wrap this up before the holidays."** (Exhibit V, emphasis added).

48.     On or about December 10, 2013, Mr. Goodro provided Gotham's Mr. Davis with a final Updated Final Report.  (Exhibit W).

49.     The next day, on December 11, 2013, Gotham's Mr. Davis emailed McShane's Mr. Hoppa stating: "I **did receive the report** and will be reviewing same and **preparing a recommendation** to my supervisor." (Exhibit X, emphasis added).

9

50.    In response to another query from McShane's Mr. Hoppa, Gotham's Mr. Davis stated in an email on December 12, 2013 that "The **final report and my recommendations** need to be reviewed by my supervisor." (Exhibit Y, emphasis added).

51.    On December 13, 2013, McShane's Mr. Hoppa asked Gotham's Mr. Davis for the contact information of Mr. Davis' supervisor so Mr. Hoppa **could ascertain the final claim resolution and payment from Gotham.** (Exhibit Z).  Up until this point in time, during the many months of interaction, communication, and claim adjustment, McShane and Gotham worked directly together (without Mallory and/or attorney involvement in the exchanges and ongoing adjustment process).  Unbeknown to Mr. Hoppa, the **$499,453.57** fully adjusted, documented, and confirmed amount already had been established **for payment** to McShane.

52.    After the completion of **nearly half a year of Gotham's adjustment** of the McShane Claim and the **completion of the Gotham final report** by Gotham's Mr. Goodro and Mr. Davis, **McShane's Mr. Hoppa received no further response from Gotham.  *Gotham deliberately and intentionally withheld from Mr. Hoppa that the $499,453.57 amount already had been determined and established for payment to McShane.***

53.    Rather than advising Mr. Hoppa of the $499,453.57 amount already established for payment to McShane, instead, **five days later** on December 18, 2013, Mr. Gilloon (an appointed "defense" attorney for Mallory) sent a letter to the undersigned counsel stating that "I was informed by **the liability claims manager** for Mallory Fire Protection's insurance carrier that someone from McShane Construction called to **discuss the status and settlement of McShane's claim**."  Mr. Gilloon proceeded to

give the directive that "I am writing to let you know this, and that Mallory Fire Protection Services, as well as **their liability insurance carrier, will be working only through counsel."** (A true and accurate copy of the December 18th Letter is attached hereto and marked as Exhibit AA, emphasis added).  This was the **first** such communication of attorney involvement with, and for, Gotham as to the McShane Claim – and instructing that future/further communications proceed "through counsel."

54.     At the time of the December 18th Letter, Mr. Gilloon was the **only** attorney retained and appointed by Gotham, and who then was in contact with McShane's legal representatives regarding the underlying Mallory litigation. However, at this late date, Mr. Gilloon abruptly **represented himself as "Gotham's counsel" for purposes of Gotham conveying to McShane that henceforth – when it came to the "status and settlement of McShane's claim" -- Gotham now "will be working only through counsel."**

55.     On or about January 24, 2014, the undersigned counsel sent a formal demand for settlement letter to Mr. Gilloon (**as Gotham's retained and appointed counsel)** and to John Svoboda ("Mr. Svoboda"), Mallory's independently retained counsel to act for Mallory in the original action.  Mr. Gilloon and Mr. Svoboda **did not respond** to the Demand Letter.  (A true and accurate copy of the January 24th Demand Letter is attached hereto and marked as Exhibit BB).

56.     On or about March 3, 2014, Alan Martin ("Mr. Martin"), longtime outside insurance coverage counsel for McShane, sent a letter to Mr. Gilloon regarding the December 18th Letter.  Mr. Martin sought to **ascertain Mr. Gilloon's role in speaking for Gotham as to the status, resolution, and payment of McShane's Claim** for the

first time in late December 2013 -- after the **nearly half year Gotham adjustment** and after **Gotham's conclusion of a "final report"** as Gotham's Mr. Davis had stated to McShane's Mr. Hoppa in December 2013. (A true and accurate copy of the March 3rd letter is attached hereto and marked as Exhibit CC).

57.   On or about March 27, 2014, Michael Gregg ("Mr. Gregg"), who referenced himself as "coverage counsel" for Gotham, sent a letter to Mr. Martin regarding the March 3rd Letter.  (A true and accurate copy of the March 27th Letter is attached hereto and marked as Exhibit DD).

58.   On or about March 28, 2014, Mr. Martin sent a letter to Mr. Gregg regarding the March 27th Letter.  (A true and accurate copy of the March 28th Letter is attached hereto and marked as Exhibit EE).

59.   On or about April 1, 2014, Mr. Gregg sent a letter to Mr. Martin regarding the March 28th Letter.  (A true and accurate copy of the April 1st Letter is attached hereto and marked as Exhibit FF).

60.   A review of the correspondence exchange shows that **Gotham/Prosight improperly and untruthfully sought to rewrite and retell the factual and substantive history of what had transpired as to McShane's Claim,** improperly failed to disclose to McShane the **"final report," the confirmed and established $499,453.57 amount,** and the determination of payment to McShane in said amount – all as part of the disposition of, and promised payment to McShane on its claim. Gotham/Prosight acted wrongfully in all respects and otherwise improperly sought to **backtrack and evade** Gotham's policy obligations.

61.     As of this filing, **after a year has passed**, Gotham/Prosight still has yet to disclose and provide directly its December 2013  coverage determination regarding the McShane Claim to McShane or the Mallory Claim to Mallory (the above information having only recently been obtained from Eagle Adjusting via subpoena).  None of the Insureds (i.e. Mallory or McShane) has received a **formal coverage determination** directly from Gotham **despite a year passing** and more than a year and a half since Gotham first received notice and began its investigation and adjustment of the McShane Claim and the Mallory Claim.

62.     McShane has prepared an updated accounting of the damages and losses resulting from Mallory's Fire Suppression Design and Installation problems, dated January 8, 2014 (the "January Damages Spreadsheet").  (Exhibit GG).

## COUNT ONE

**Gotham has violated the Nebraska Unfair Insurance Trade Practices Act**

63.     McShane incorporates by reference Paragraphs 1 through 62 above as if fully set forth herein.

64.     Gotham/Prosight has violated the Nebraska Unfair Insurance Trade Practices Act.

65.     Under Neb. Rev. Stat. §44-1525(9), Gotham/Prosight has handled McShane's Claim and Mallory's Claim in bad faith.

66.     Gotham/Prosight has not been forthright, truthful, or timely in its adjustment of, and communications regarding, the aforementioned claims (and Gotham's subsequent merging and combining of the McShane Claim into the Mallory Claim), even though both claimants properly submitted claims on their own behalf and engaged

13

separately with Gotham in the adjustment and attempted resolution of their respective claims.

## COUNT TWO
**Gotham has violated the Nebraska Unfair Insurance Claims Settlement Practices Act**

67.     McShane incorporates by reference Paragraphs 1 through 66 above as if fully set forth herein.

68.     Gotham/Prosight has violated the Nebraska Unfair Insurance Claims Settlement Practices Act.

69.     Under Neb. Rev. Stat. §44-1540, Gotham/Prosight has:

a.   knowingly misrepresented relevant facts and/or policy provisions relating to the McShane Claim and the Mallory Claim;

b.   failed to acknowledge with reasonable promptness pertinent communications with respect to the McShane Claim and the Mallory Claim;

c.   failed to adopt and implement reasonable standards for the prompt investigation and settlement of the McShane Claim and the Mallory Claim;

d.   not attempted in good faith to effectuate prompt, fair, and equitable settlement of the McShane Claim or the Mallory Claim;

e.   delayed and/or refused to pay the McShane Claim or the Mallory Claim without conducting a reasonable investigation; and

f.   failed to affirm or deny coverage of the McShane Claim or the Mallory Claim within a reasonable time after submission of the claims.

## COUNT THREE
**Gotham has violated the implied covenant of good faith and fair dealing**

70.     McShane incorporates by reference Paragraphs 1 through 69 above as if fully set forth herein.

71.     McShane is owed a duty of good faith, honesty, and fair dealing from Gotham/Prosight, as an Additional Insured and/or Third Party Beneficiary under the Policy.

72.     There is an absence of a reasonable basis for Gotham's/Prosight's failure to assume and pay for the damages and losses sustained by McShane.

73.     McShane also had a duty to mitigate damages, for which Gotham is liable.

74.     Gotham/Prosight failed timely to conduct a proper and thorough inspection on its own to determine, and confirm, the validity of McShane's evaluation and findings and/or improperly failed timely to recognize and make payment based on them, which was an act or series of acts performed in bad faith by Gotham/Prosight.

75.     Gotham/Prosight had knowledge of and/or exhibited a reckless disregard of the lack of a reasonable basis for failing to assume and pay for the damages and losses sustained by McShane, which constitute an act or series of acts performed in bad faith.

76.     Gotham/Prosight's failure to act in good faith has caused McShane financial hardship including, but not limited to monetary damages and expenditures, including expenditure of corporate time and attorney's fees and costs.

## COUNT FOUR
**Under Neb. Rev. Stat. §44-359 Attorney's Fees should be awarded to McShane**

77.     McShane incorporates by reference Paragraphs 1 through 76 above as if fully set forth herein.

78.    Under Neb. Rev. Stat. §44-359, McShane is entitled to bring an action against Gotham/Prosight as an Additional Insured under the Policy.

79.    Due to the actions/inactions of Gotham in handling the McShane Claim and the Mallory Claim, the Court should award reasonable attorney's fees to McShane.

## COUNT FIVE
### Breach of Contract

80.    McShane incorporates by reference Paragraphs 1 through 79 above as if fully set forth herein.

81.    Gotham has breached its obligations and duties to McShane as an Additional Insured under and/or a Third-Party Beneficiary to, the Policy.

82.    Gotham has failed to pay the damages and losses sustained by McShane and caused by Mallory's negligence.

83.    As a direct and proximate cause of Gotham's failure to perform obligations under the Policy, Gotham is in breach of the Policy provisions and McShane has sustained damages in an amount to be determined at trial, including but not limited to attorney's fees associated with bringing this action, in an amount exceeding $499,453.57.

## COUNT SIX
### Waiver and  Estoppel

84.    McShane incorporates by reference Paragraphs 1 through 83 above as if fully set forth herein.

85.    Gotham, through its words and deeds, both waived and is estopped from seeking to evade its liability to McShane and its responsibility to pay McShane's Claim.

86.    Gotham had issued to McShane, through Gotham's Authorized Representative, the insurance Certificate naming McShane as an Additional Insured and

16

on which information McShane was to rely and did in fact rely to its detriment in using/hiring Mallory for the Project.

87.     Gotham engaged McShane in a lengthy and prolonged adjustment of the McShane Claim, caused McShane to expend substantial resources and effort as part of the claim adjustment, caused the underlying litigation to remain largely in abeyance pending the Gotham claim adjustment and payment, conveyed to McShane the reasonableness and propriety of McShane Claim amounts for payment by Gotham, received supplemental information from McShane for further verification and claim amount payment, concluded a "final report," with a confirmed and established $499,453.57 amount for payment of the McShane Claim,  and other related conduct such that Gotham plainly evidenced its intentional relinquishment of any dispute as to covering and making payment to McShane and further McShane reasonably relied on Gotham's words and deeds to its detriment so as to estop and preclude Gotham from now trying to evade and backtrack on its commitments to McShane.

88.     Based on its words and deeds, Gotham is subject to waiver and/or estoppel so as to preclude Gotham from reneging on its adjustment of the McShane Claim and the making of payment to McShane.

## COUNT SEVEN
### Rescue Doctrine

89.     McShane incorporates by reference Paragraphs 1 through 88 above as if fully set forth herein.

90.     Gotham is liable to McShane under the common law Rescue Doctrine.

91.     Mallory negligently designed and installed the fire suppression system, which created a dangerous environment and prevented the completion of the Project.

17

92.    McShane, as rescuer, has sustained damages for which Gotham is liable to pay McShane.

### COUNT EIGHT
### Declaratory Relief

93.    McShane incorporates by reference Paragraphs 1 through 92 above as if fully set forth herein.

94.    McShane seeks a declaration pursuant to Neb. Rev. Stat. § 25-21,149 as to the rights and obligations of Gotham to McShane and Mallory regarding the McShane Claim and Mallory Claim pursuant to the Policy.

WHEREFORE, Plaintiff, McShane Construction Company LLC, prays for a judgment against the Defendant, Gotham Insurance Company, in the amount of $499,453.57, such further damages as established, plus interest and attorney's fees, and such further and other relief as is just.

MCSHANE CONSTRUCTION COMPANY LLC,
Plaintiff

By: _____
        David J. Koukol #18102
        Kristen M. Stiffler #24534
        KOUKOL & JOHNSON, LLC
        12020 Shamrock Plz., #333
        Omaha, NE  68154
        Phone:  (402) 934-9499
        Fax:  (402) 934-7730
        Email:  dkoukol@westomahalaw.com
        Attorneys for Defendant,
        McShane Construction Company LLC

18

## VERIFICATION

I, Scott Hoppa, Senior Vice President of McShane Construction Company LLC, Defendant in the above referenced action, being first duly sworn on oath, depose and state that I am a duly authorized representative of the Defendant herein, that I have read the foregoing Verified Complaint, and that the contents thereof are true as I verily believe.

MCSHANE CONSTRUCTION
COMPANY, LLC

BY: _____

Scott Hoppa, Senior Vice President
Daniel P. McShane, Secretary

STATE OF _____AL_____ )
                              ) ss.
COUNTY OF _____Lee_____ )

The foregoing instrument was acknowledged before me this 23rd day of December, 2014, by Scott Hoppa, Senior Vice President of McShane Construction Company LLC, on behalf of the limited liability company.

_____
Notary Public

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Feb 9, 2015
BONDED THRU NOTARY PUBLIC UNDERWRITERS